IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| TOMMY ALPHONSO, | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION NO. 07-529-KD-M |
| ESFELLER OIL FIELD CONSTRUCTION | ) |
| Defendant. | ) |

## **ORDER** [1]

On January 28-30, 2009 this action was tried to the court sitting without a jury. Plaintiff, Tommy Alphonso, filed the complaint against defendant, Esfeller Oil Field Construction, on July 30, 2007 alleging, in sum, that he was injured in the line and scope of his employment as a result of defendant's negligence. (Doc. 1) Specifically, plaintiff alleges that an employee of the defendant was "reckless and negligent" in operating a forklift in reverse while carrying a length of pipe that struck and injured plaintiff. In response to the complaint, defendant, maintains, in sum, that its' actions were not negligent, but rather, that plaintiff's injuries were the result of his own contributory negligence. (Doc. 11). Based on the testimony presented, the court makes the following findings of fact and conclusions of law.

I.      FINDINGS OF FACT

---

[1] The court addresses only the issue of liability in this order. A separate order on damages will be issued following an opportunity for the parties to submit their respective briefs on the issue.

Plaintiff Tommy Alphonso was employed as a pipe fitter by Cembell Industries.[2] On August 8, 2006, Mr. Alphonso was assisting in repairing and installing a boiler located at the Alabama Exxon Mobil plant ("Maryann Plant") in Mobile, Alabama. Employees of the defendant, Esfeller Oilfield Construction, were also at the Maryann Plant working on the boiler project.

The Cembell employees did not operate any "heavy machinery" at the Maryann Plant during this job. Rather, if something needed to be moved, an Esfeller employee would perform the task using a truck, forklift or a lift. Among the Esfeller equipment located at the Maryann Plant on the date of the accident was a Caterpillar TH-82 forklift, a side-armed telescoping forklift. The TH-82 forklift is approximately eight feet wide.[3]

On the date of the accident, Mr. Alphonso was working with his co-workers on cutting lengths of pipe for installation on the boiler, located in the "boiler building". The pipes were cut and fitted at the fabrication ("fab shop") shop which was located down an asphalt paved road approximately one hundred yards from the "boiler building".[4] After conducting a "dry fit" of the pipes on the boiler it was determined that some of pipes were the incorrect length and had to be transported back to the fabrication shop for addition cutting. Marion Necaise, Jr., the Field Supervisor of the Cembell crew, climbed up a ten foot scaffolding to obtain the new measurements for the pipe and called down the new measurements to Mr. Alphonso. Mr.

---

[2] Cembell Industries is not a party to this litigation. Cembell's workers compensation carrier, The Gray Insurance Company, is an intervenor in this action.

[3] Measuring from the front to back tires only, the forklift is approximately ten feet long.

[4] The fabrication shop was described as being enclosed and inside a fenced area while the boiler was located out in the open.

Alphonso testified that he had no difficulty hearing Mr. Necaise, despite the general construction noise present at the plant.  After receiving the new measurements from Mr. Necaise, Mr. Alphonso proceeded on foot toward the fabrication shop.  Mr. Alphonso testified that he walked "in the shells" and estimates that he was approximately two to three feet from the asphalt road.  The width of the asphalt road way was approximately ten feet.  The testimony established that bordering the asphalt pathway was a pedestrian walkway that was comprised of shells/rocks.  The employees were instructed to walk on the shell pathway when moving from the boiler to the fab shop.

      The pipe was loaded onto the TH-82 forklift by several of the Cembell employees for transportation back to the fab shop.  The forklift was operated by Keith Burnett, a certified forklift operator employed by Esfeller.  Mr. Burnett has twenty-seven years of experience operating a forklift.  Mr. Burnett testified that he operates a TH-82 the majority of the time.  The parties stipulated that the pipe was a 1 ½ inch drain pipe approximately 17 feet in length[5] with a right angle of approximately two feet.  The forks on the forklift were raised approximately four to five feet above ground with the forks at a 10° to 15° angle at the time of the incident.

      After the pipe was loaded Mr. Burnett began to back the forklift down the roadway.  Mr. Burnett was traveling in reverse in second gear.  The second gear has a maximum speed of seven (7) miles per hour.  Mr. Burnett testified that he elected to travel in reverse to the fab shop because his forward vision was obstructed as a result of the load which was lifted approximately

---

[5] There was conflicting evidence presented regarding the length of the pipe.  All the witnesses agreed however that the length of the pipe exceeded the width of the asphalt driveway.  However, the joint pretrial document, in which the parties stipulated to the length of the pipe was ordered to be the final statement of the issues.  (See doc. 66)

four to five feet above the ground.  He further testified that he had a clear view looking through the back of the forklift and determined that he did not need a spotter.[6]  Defendant's expert, John Faulk, who was accepted by the court as a safety expert in the use and operation of forklifts, testified that he agreed with Mr. Burnett's decision to operate the forklift in reverse, and, in fact, Mr. Burnett would have had a better view traveling in reverse.

As Mr. Burnett backed the forklift down the service road, the backup alarm on the forklift sounded.  Mr. Alphonso testified that he did not hear the back up alarm.  He also testified that he did not have in his earplugs and has no known hearing issues.  Mr. Burnett testified that he observed Mr. Alphonso  walking back to the weld shop along the rocky path that runs parallel to the asphalt roadway.  He further testified that after he had passed Mr. Alphonso, Mr. Alphonso was in the road and appeared to be in distress.  Mr. Burnett stopped the TH-82 and went to the assistance of Mr. Alphonso along with other employees on the site.

Because the length of the pipes were wider than the asphalt roadway a portion of the pipe extended past the sides of the forklift and onto the rocky path/pedestrian walkway where Mr. Alphonso was walking.  At some point, the overhang of the pipe struck Mr. Alphonso in the area of his neck and shoulder.  Mr. Alphonso was transported to the hospital. [7]  No witness testified

---

[6] A spotter walks in front of the forklift to ensure a clear path.  Plaintiff's expert, Rom G. Bredmeyer, testified that there is no rule that a spotter must be used and conceded that Exxon did not require that its forklift operators use a spotter.  However, Mr. Bredmeyer also testified that spotters are recommended in certain situations.

[7] Mr. Alphonso testified that he has undergone at least 4 surgeries on left arm and is still in a great deal of pain. He has seeing a physician for his back and foot problems. He is undergoing in-office pain procedures – "Blocks" – for his continuing arm pain and is taking prescription medicine.

that he observed the impact. Glen Reeves, a Cembell employee, testified that after the accident Mr. Burnett was visibly upset and told him he did not see Mr. Alphonso. Following the accident Mr. Burnett took, and passed, a drug test.

Two days following the accident Cembell Industries issued an accident investigation report identifying the following preventative measures for avoiding the accident: 1) obey speed limit 2) escort load, and 3) use horn. Thereafter, Exxon issued a Reports and Root Cause Analysis of the accident noting that "Several witnesses indicated the forklift was traveling too fast while hauling the load." The report identified the "root causes" of the accident as: 1) lack of spotter for load movement, 2) backing load instead of moving forward, 3) impaired view when back up fork lift, 4) excessive speed of forklift, 5) possible blind spot when backing forklift, and inattention to fork lift engine noise and back up alarm.

II.     APPLICABLE LAW

Plaintiff claims that the defendant was negligent in the operation of the TH-82 by operating the equipment at an excessive speed, operating in reverse and failing to use a spotter. Defendant maintains that Mr. Burnett was not negligent and properly operated the equipment in question. Defendant further contends that Mr. Alphonso was contributorily negligent by failing to heed the back-up alarm.

*Negligence*

Under Alabama law, "[t]o establish negligence, the plaintiff must prove: (1) a duty to a foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damage or injury." Martin v. Arnold, 643 So. 2d 564, 567 (Ala. 1994) citing Albert v. Hsu, 602 So.2d 895, 897 (Ala. 1992). "Proof of negligence may be established completely through circumstantial

evidence, and if there is evidence that points to any plausible theory of causation, there is a basis for recovery." Elba Wood Products, Inc. v. Brackin, 356 So.2d 119, 123 (Ala. 1978) (citations omitted)

In this case, plaintiff pleads, in the alternative, the doctrine of res ipsa loquitur. Res ipsa loquitur, which means "the thing speaks for itself" allows a party to prove negligence by using circumstantial evidence. Carrio v. Denson, 689 So.2d 121, 123 (Ala.Civ.App.,1996) Thus, under in certain instances, the finder of fact can infer negligence from surrounding facts if the exact cause of an injury is unknown or unknowable. Khirieh v. State Farm Mutual Automobile Insurance Co., 594 So.2d 1220 (Ala.1992). However, "[t]he doctrine of res ipsa loquitur does not require that a defendant be held liable merely because no explanation exists for how an accident occurred. There must be some indication that the defendant was negligent and that the accident occurred as a result of the negligence." Carrio, 689 So.2d at 123, citing W. Prosser, Torts, § 39  (4th ed. 1971).

"Usually, for res ipsa loquitur to apply, either the instrumentality or the act that caused the injury must be shown." Khirieh, 594 So. 2d at 1223(citation omitted). Once this is shown, plaintiff must establish the following:  (1) defendant had full management and control of the instrumentality which caused the injury; (2)  according to common knowledge and experience the accident could not have happened if those having control of the management had not been negligent; (3) the plaintiff's injury must have resulted from the accident.

*Contributory Negligence*

Notwithstanding the negligence of the defendant, under Alabama law, if plaintiff is deemed to have been contributorily negligent in any manner, he will be barred from any

recovery. J.H.O.C. v. Volvo Trucks North America, Inc., 2008 WL 5264666, * 5 (11th Cir. , December 18, 2008) (slip opinion) ("A plaintiff cannot recover in a negligence ...action where the plaintiff's own negligence is shown to have proximately contributed to his damage, notwithstanding a showing of negligence on the part of the defendant.")(citations omitted); Salter v. U.S., 880 F.Supp. 1524, 1533 (M. D. Ala.,1995) ("It is well established under Alabama law that 'a plaintiff cannot recover in a negligence suit when the plaintiff's own negligence is shown to have proximately contributed to the damage, notwithstanding a showing of negligence on the part of the defendant.' ")(citations omitted)

"Contributory negligence is established if a plaintiff has (1) knowledge of the condition, (2) appreciation of the danger, and (3) fails to exercise reasonable care with such knowledge and appreciation of the danger." Scott v. ABF Freight Systems, Inc., 306 F.Supp.2d 1169, 1175 (M. D. Ala.,2004) citing Wallace v. Alabama Power Co., 497 So.2d 450, 457 (Ala.1986); see also H.R.H. Metals, Inc. v. Miller ex rel. Miller, 833 So.2d 18, 27 (Ala.2002) ("[I]t has long been recognized that contributory negligence may also be predicated upon the failure to appreciate the danger when there is a reasonable opportunity to do so under the circumstances.") Thus, if it can be shown that plaintiff "had knowledge of facts sufficient to warn a man of ordinary sense and prudence of the danger to be encountered, and of the natural and probable consequences of his own conduct[ ]," plaintiff is "guilty of negligence if he fails to exercise ordinary care to discover and avoid the danger and the injury." Alabama Power Co. v. Mosley, 294 Ala. 394, 318 So.2d 260, 263 (1975); Elba Wood Products, Inc. v. Brackin, 356 So.2d 119, 124 (Ala. 1978) citing State Farm Mutual Auto Ins. Co. v. Dodd, 276 Ala. 410, 162 So.2d 621 (1964) ("Contributory negligence requires that the party charged have knowledge of the condition or failure , have

appreciation of danger under the surrounding conditions and circumstances, and yet fail to exercise reasonable care but rather put himself into the way of danger.")

III.    ANALYSIS

Plaintiff alleges that defendant was negligent by (1) operating the forklift in reverse; (2) operating the forklift at too fast a speed; (2) by not using a "spotter" when operating the unit in reverse; (3) by failing to sound the horn on the forklift; (4) by not paying attention to the area of operation, and (5) by extending the cargo load into the pedestrians-only walking area.

The court finds the following testimony credible.  Keith Burnett, the driver of the forklift, and defendant's expert, John Faulk, testified that it is an accepted practice to operate forklifts in reverse.  Mr. Faulk, a safety expert in the use and operation of forklifts, testified that Mr. Burnett would have had a better view operating in reverse.  Mr. Burnett testified that he made the determination that his view was less obstructed if he were to operate the forklift in reverse since the raised position of the forks partially encumbered the forward view.  Specifically, Mr. Burnett opined that traveling in a forward motion, the arm of the forklift would obstruct the view to his right.  There was no evidence presented that it is per se negligent for a forklift to be operated in reverse.  To the contrary, the evidence reflected that the primary concern is to operate in a manner that provides the least obstructive view of the path to be traveled.  The court finds that it was reasonable for Mr. Burnett to drive the forklift in reverse, considering the circumstances.  Thus, operating the forklift in reverse was not negligent.

The court also finds that there is insufficient evidence to support the contention that the failure to use a spotter while traveling down the asphalt road was negligent.  There was testimony presented that Exxon did not require spotters at the Maryann Plant.  Moreover, the

court credits the testimony of John Faulk that a spotter was not required in this particular situation.

Further, the court finds that Mr. Burnett's failure to sound the horn on the forklift was not negligent. There was no evidence presented at trial to indicate that the backup alarm was not fully functional at the time of the accident and the court finds that the alarm was, in fact, operational. The use of the horn may have been helpful, but the failure to use it is not negligence considering that the backup alarm was employed.

Moreover, while the court agrees that driving the forklift at an excessive speed could constitute negligence, there was insufficient evidence presented at trial to support this finding. Rather, the evidence established that, (1) the speed limit at the Maryann Plant was 10 miles per hour; (2) at the time of the accident the forklift was being operated in second gear and (4) the maximum speed achievable in second gear is seven miles per hour. The court thus finds that the forklift was being operated between five and seven miles per hour.[8] Based on the evidence, the court cannot find that the forklift was operating at an excessive speed at the time of the accident.

However, the court finds that there is sufficient evidence to find that Mr. Burnett negligently failed to pay sufficient attention to the area of operation and account for the width of his load. Although Mr. Burnett testified that he observed Mr. Alphonso walking down the rocky side path as he passed him in the forklift, Mr. Burnett failed to adequately judge the width of his load and failed to compensate accordingly.

The pipe loaded on the forklift extended into the pedestrian walkway. The pipe was

---

[8] Mr. Burnett testified that he was going approximately 5 miles per hour at the time of the impact.

seventeen (17) feet in length with a ninety degree bend on one end approximately two feet in length.  Further, Mr. Burnett testified that the because the bent end was "heavier", more of the pipe extended out toward the side where Mr. Alphonso was walking (and thus into the pedestrian pathway).   Thus, considering that the road is ten feet wide, approximately four feet of the pipe would have been extended into the pedestrian walkway.  Moreover, Mr. Burnett stated  that as he drove the forklift down the path he observed Mr. Alphonso walking along the pedestrian pathway and noted that Mr. Alphonso never looked at him.

      Having concluded that defendant's actions were negligent, the court now turns to the issue of whether plaintiff's actions were contributorily negligent such that recovery is barred.  There was insufficient evidence presented at trial that plaintiff's actions contributed in any manner to his injuries.  Specifically, there was no testimony that Mr. Alphonso veered off the stone pathway or that he was in any manner out of the pedestrian-only walk path when he was struck by the pipe. Rather, the evidence presented was that Mr. Alphonso was in the area the workers were told to use to travel between the fab building and the boiler building to avoid the path of the construction equipment.

      Further, the court does not find it unreasonable that Mr. Alphonso did not hear the backup alarm on the forklift.  There was testimony that much of the moving equipment at the Maryann Plant contained the backup alarms and the beeping in the construction area came from many different pieces of equipment.  There was no evidence presented that Mr. Alphonso was wearing his safety earplugs or otherwise had his hearing obstructed at the time of the accident.

IV.    <u>CONCLUSION</u>

Based at the evidence presented at the trial of this matter, the court finds that defendant was negligent in the operation of the forklift causing the accident made the basis of this litigation.  The court further finds that there is no evidence that Mr. Alphonso failed to exercise reasonable care under the circumstances such that his actions may be deemed a contributing factor to this accident.

The court will address the appropriate damages to which plaintiff is entitled by separate order.  The parties are to submit briefs, with specific citations to the evidence, on the issue of damages as follows:   Plaintiff's brief due **February 27, 2009**; Defendant's brief due **March 6, 2009.**

DONE this the 20th day of February 2009.

                                            S/ Kristi K. DuBose
                                           **KRISTI K. DuBOSE**
                                           **UNITED STATES DISTRICT JUDGE**