IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| TOMMY ALPHONSO, | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION NO. 07-529-KD-M |
| ESFELLER OIL FIELD CONSTRUCTION | ) |
| Defendant. | ) |

**ORDER**

This action came before the court on a bench trial on January 28-30, 2009. On February 20, 2009 the undersigned entered an order finding the defendant liable for the actions of its employee in operating a forklift in a negligent manner causing injury to the plaintiff. The court then ordered the parties to submit briefs on the issue of damages. That briefing is now complete and the court makes the following determinations.[1]

Plaintiff seeks damages in the following areas: (1) past medical expenses; (2) future medical expenses; (3) past lost wages; (4) future lost wages and (5) general damages. Under Alabama law, damages, in order to be recoverable, cannot be based upon speculation or conjecture but must be proven to a reasonable degree of certainty. See, e.g., Bergob v. Scrushy, 855 So. 2d 523 (Ala. Civ. App. 2002). As a threshold matter, the court rejects defendant's arguments that any damages award would be impermissibly based on speculation and conjecture. The court finds that sufficient evidence to sustain the damages award as set out below was

---

[1] The court's factual findings were fully set forth in the February 20, 2009 order on liability and, as such, the court will not reiterate those findings in this order. (See Doc. 78)

presented at trial in the form of bills for services, testimony from treating physicians as well as plaintiff's own testimony.

I.    <u>PAST MEDICAL EXPENSES</u> [2]

Plaintiff first seeks damages for past medical expenses.  Defendant argues that plaintiff should recover nothing in this category, since he failed to produce evidence, expert or otherwise, that the expenses were reasonable and necessary.  Contrary to defendant's position, the court finds that there is sufficient evidence to sustain an award in favor on plaintiff for past medical expenses.  "[T]estimony and other evidence which show the severity of the employee's injury, the number of physicians he consulted, and the different treatments he required are themselves evidence of the reasonable necessity of the expenses related by the bills." <u>Dun & Bradstreet Corp. v. Jones</u>, 678 So.2d 181 (Ala.Civ.App.,1996) quoting <u>Lowe v. Walters</u>, 491 So. 2d 962, 963-64 (Ala. Civ. App. 1986).  Plaintiff testified that he saw many doctors as a result of his injury and explained in detail the procedures performed.  Moreover, based on the deposition testimony of the doctors describing the procedures and the necessity of the procedures performed, the court finds the charges billed to be reasonable and necessary.  Additionally, the procedures described by plaintiff's treating physicians are painful and dangerous and it is not reasonable to believe that a professional would recommend these procedures unless medically necessary.  Moreover, defendant failed to present any testimony that the procedures were not medically necessary.  Due to the nature of the surgeries and procedures involved, the court finds

---

[2] The parties have stipulated that plaintiff's workers compensation carrier has paid $136, 276.96 in medical bills and $58, 846.24 in compensation payments.

it is reasonable to believe that plaintiff's complaints that resulted in the procedures were credible. Accordingly, plaintiff is awarded the sum of **$158,489.00** for past medical bills.[3]

II.   FUTURE MEDICAL BILLS

Plaintiff next claims future medical bills and there is evidence in the record to support that future treatment may be necessary, particularly in the area of controlling pain (e.g., ganglion blocks). Moreover, the parties agree that plaintiff has not yet reached maximum medical improvement. (Doc. 62, p. 5) However, plaintiff has failed in his proof in submitting any costs estimates for this future treatment. While plaintiff argues generally in his damages brief that he is a "candidate for a tarsal tunnel surgery, back surgery and additional ganglion blocks and a possible spinal stimulator" no evidence has been directed to the court's attention of the costs of such procedures. The court specifically instructed the parties that they must point to specific evidence in the record to support their claims. The court will not fill in the blanks left open by the plaintiff on this issue. Accordingly, no award is made for future medical bills.

III.   ECONOMIC DAMAGES

A.   *Lost Past Wages*

Plaintiff next argues that he is entitled to economic damages, including lost past wages and future wages. Plaintiff maintains that the appropriate measure of damages for loss of earnings should be based on an assumption that he has 100% loss of wages from the date of the

---

[3] Trial Exhibit No. 1 reflects that plaintiff has incurred medical bills in the amount of $158,489.00.

accident until he is able to achieve maximum medical improvement ("MMI") at some undetermined future date. Defendant argues that plaintiff's measure of damages incorrectly assumes that plaintiff was "totally incapable of working at any time from the time of his accident until the date of trial." (Doc. 82, p. 5)

The evidence presented at trial reflects that on June 26, 2007, Dr. Harold Stokes opined that plaintiff was capable of returning to light duty work. Moreover, additional evidence, including the surveillance video[4] reflects that plaintiff is presently physically capable of performing some level of work. As such, the court will first consider plaintiff's lost wages from the date of the accident until he was deemed fit to return to light duty, and then will determine lost wages from the release date to the date of trial.

    1.    *August 8, 2006 to June 26, 2007*

Plaintiff's 2004 tax return (plaintiff's last full tax return before Hurricane Katrina hit the Gulf Coast Region in August 2005 ) supports plaintiff's testimony at trial that prior to the accident he was earning approximately $20 per hour, plus benefits.[5] Accordingly, the court finds that plaintiff is entitled to an award for lost past wages in the sum of $20 per hour from the date of the accident (August 8, 2006) until he was released to light duty (June 26, 2007). For this period of time plaintiff is awarded lost wages in the sum of **$ 37,280.00**.[6]

---

[4] Defendant retained Scott Hawke Investigations to conduct a video surveillance of plaintiff during the period February 19, 2008 through December 19, 2008.

[5] Plaintiff's 2004 W-2 reflects an earned income amount of $40,926.00.

[6] There is no evidence before the court to support an award for loss of health benefits. Specifically, plaintiff has failed to show any costs incurred as a result of not having health benefits. Further, the court has not included in its calculation any adjustment for business expenses because plaintiff's skills allowed him wages at $20 per hour, regardless of any business expenses, (e.g., gas) he would have incurred.

    2. *June 27, 2007 to January 30, 2009*

Based on the testimony and report of defendant's vocational rehabilitation expert, Dr. Carla Seyler, the court finds that plaintiff is capable of performing light duty work, particularly retail sales.[7] Dr. Seyler's vocational report reflects that there are 710 annual openings in the retail area in the Greater New Orleans area and that the average income for those positions is $ 24,130 per year ($11.60 per hour). Based on this evidence, the court finds that between June 27, 2007 to January 30, 2009, Mr. Alphonso *could have obtained* employment earning a wage of $11.60 per hour. Thus, the plaintiff's lost wages as a result of injuries sustained in the accident are $8.40 per hour. ($20.00 per hour - $11.60 per hour = $8.40)[8] Thus, for the 79 week period between June 27, 2007 and January 30, 2009, plaintiff is awarded lost wages in the amount of **$26, 544** (79 x $8.40 = $336 week x 79 weeks = $26,544)**.**

  B. *Lost Future Wages* [9]

---

[7] This finding is further supported by the defendant's submission of surveillance video taken over the course of several months showing plaintiff selling leather jackets and assorted trinkets from the back of his car.

[8] The court's calculation does not include benefits lost as there was no evidence from plaintiff that he could not obtain a job with benefits at the light duty level. The court will not make assumptions where there is no evidentiary support.

[9] In making a determination for any future damages, the court must take into consideration inflation and the time-value of money. See, e.g., Jack Cole Co. v. Hays, 281 Ala. 118, 199 So.2d 659, 665 (1967). The court's calculation includes these factors.
  However, the calculation does not include a deduction for income taxes, social security taxes, retirement contributions, or other withholdings. The court has found no authority, nor has any been cited in the parties' briefs, that would permit the court to reduce the award by any applicable state or federal taxes. See Portis v. Wal-Mart Stores East, L.P., 2008 WL 2959879, *5 (S. D. Ala., July 30, 2008) In Portis the court relied on the fact that neither the "leading treatise on Alabama's law of damages...[or] the relevant pattern jury instruction"discuss such an approach [deduction for taxes] and accordingly, the court concluded that any jury award for lost earnings is not required to be reduced to account for taxes. Id. citing Jenelle Mims Marsh & Charles W. Gamble, Alabama Law of Damages (5th ed.2004); Alabama Pattern Jury Instructions

Mr. Alphonso has asserted a claim for lost future wages based upon his contention that he is permanently and totally disabled and that he will never be able to work or otherwise earn money in any capacity again. Defendant argues that any such award would be impermissibly based on speculation and conjecture. The court finds the evidence insufficient to establish that plaintiff is permanently and totally disabled. However, the court does find that there was sufficient evidence presented that plaintiff continues to suffer from the effects of the injury such that he is permanently partially disabled.

Due to his injuries, plaintiff has certain physical limitations that preclude him from engaging in heavy duty work. Plaintiff was employed as a pipefitter and this is the field in which he possesses the most skill and training. However, there was also evidence presented that plaintiff was released to engage in light duty work and has, in fact, participated in some entrepreneurial retail sales. Moreover, plaintiff has not presented sufficient evidence that he is unable to engage in light duty. Based on the medical reports and deposition testimony of his treating physicians, the court finds that plaintiff is partially disabled as follows:

     1.    *Torn Rotator Cuff*

Mr. Alphonso testified that he suffered a torn rotator cuff which was repaired in a series of two surgeries occurring on September 28, 2006 and January 23, 2007. Plaintiff reports minor, intermittent stiffness and soreness but otherwise testified that he has good range of motion and use of his left shoulder. In fact, plaintiff testified that had this been the only injury he sustained in the accident, he would have been able to return to work.

---

Civil § 11.10.

      2.    *Left Ulnar Nerve/Elbow*

Mr. Alphonso was treated initially for his ulnar nerve neuropathy by Dr. Stokes on April 9, 2007, approximately eight months after the accident. On April 18, 2007, Dr. Stokes performed a surgical decompression procedure to repair the nerve. Mr. Alphonso testified that the pain returned after several months and he was forced to discontinue physical therapy. He was ultimately referred to Dr. Crapanzano for pain management and was diagnosed with "Complex Regional Pain Syndrome, Type II" (secondary to a nerve injury)

Mr. Alphonso testified that beginning in July 2008 he received stellate ganglion blocks for the pain. He reported that he had initial relief but by September 2008 he was still experiencing pain. Mr. Alphonso testified that he continues to experience pain and numbness in his hand and has difficulty gripping or holding objects. Dr. Crapanzano testified that with additional blocks, along with a possible spinal cord stimulation, he may be able to reduce Mr. Alphonso's pain in his left arm and hand.

      3.    *Back Injury*

Mr. Alphonso has been treated by Dr. Bernard Manale in New Orleans for his back pain. Plaintiff presented evidence that Dr. Manale continues to treat him for back pain. Dr. Manale has recommended surgery in which a cage like structure would be placed to hold the discs together. While the court finds that plaintiff's back pain contributes to his reduced ability to perform heavy work, the court does not credit plaintiff's testimony regarding the extent of back pain he experiences.

      4.    *Foot*

Plaintiff also testified that he continues to experience numbness in his foot and that he

was treated by Dr. Caradine, who has recommended tarsal tunnel release surgery.  While the court finds that plaintiff's testimony that he experiences foot problems to be credible, the court does not credit the extent of disability in his foot as testified to by plaintiff.

As outlined above, the court finds there was sufficient evidence presented at trial that Mr. Alphonso may require additional treatment and/or surgeries in the future.  Although plaintiff has not yet attained MMI, there is no indication that when he does so, he will regain full use of his arm and hand, which according to the evidence presented and plaintiff's own testimony, is his major impediment to returning to heavy duty employment as a pipe-fitter.[10]  Based on the evidence presented at trial, the court finds plaintiff to be *partially disabled*, but as described *supra*, capable of performing light work in a retail job at a rate of at least $11.60/hr.  Based on this determination, the court finds that plaintiff has lost future wages of **$17,472.00/year.**[11]

The court next finds that plaintiff has a work life expectancy of 20 years.  Defendant's expert economist, Dr. Dan Cliffe, testified that as of October 2008, plaintiff's work life expectancy was 20 years.[12]  Accordingly, the court finds that plaintiff is entitled to lost future wages in the amount of $349,440.00.  The court relies on Dr. Cliffe's testimony to determine that a discount rate of 2.16 % should be applied to calculate the present value of plaintiff's future

---

[10] Plaintiff testified that he was not physically capable of working as a welder or pipefitter as those jobs require two hands and involve moving and lifting heavy objects.  Plaintiff also testified that he is presently on Loritab for pain which would also preclude him being hired in these positions.

[11] This figure is based on the court's finding that prior to the accident plaintiff was earning $20/hr and post accident that plaintiff can earn $11.60/hr resulting in an hourly loss of $8.40.  ($8.40 x 40 hours/wk x 52 weeks/yr. = 17, 472.00/yr)

[12] This determination was echoed by Dr. Harold Asher, an economist, who testified that plaintiff had a work life expectancy of 20.18 years.

wage earnings. Thus, based on this formula, the present value of plaintiff's lost wages is **$ 281,329.68 **.[13]

IV.     OTHER COMPENSABLE DAMAGES

Plaintiff also seeks damages for pain and suffering. "The trier of fact determines the amount of damages to be awarded for pain, suffering and mental anguish in light of all the relevant circumstances including, but not limited to, the intensity, severity, character and duration of the pain, suffering and mental anguish." Gess v. U.S., 991 F.Supp. 1332, 1347 (M.D. Ala. 1997) citing Brandwein v. Elliston, 268 Ala. 598, 109 So.2d 687 (1959). While the court believes that plaintiff has been subjected to some pain over the course of his treatment, the plaintiff's testimony regarding the extent of his pain was not credible. Moreover, as portrayed in the video submitted by defendant, the plaintiff's daily activities do not support the extent of daily and excruciating pain as described by plaintiff at trial. Accordingly, the court awards plaintiff the sum of **$5,000** for pain and suffering.

DONE this the 24th day of March 2009.

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**

---

[13] This determination is based on the following formula: $PV = FV/(1.0216)^1 + FV/(1.0216)^2 + ... FV/(1.0216)^{20}$